CARMEN DENIS WIDOW OF MALDONADO, ETC., ET AL., Plaintiffs and Appellants, *v.* SAVINGS AND LOAN FUND ASS'N, ETC., Defendant and Appellee.

No. 11035.   Argued December 4, 1953.—Decided January 28, 1954.

*M. A. García del Rosario* for appellants. *E. Ramos Antonini* for appellee.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

This is a suit for a declaratory judgment in which the plaintiffs pray that a resolution adopted by the board of directors of the Savings and Loan Fund Association of the Employees of the Government of Puerto Rico, pursuant to Act No. 52, Laws of Puerto Rico, 1921, as amended by Act No. 189, Laws of Puerto Rico, 1942, be declared null and void. This resolution, adopted on February 25, 1947, reads in part as follows:

*"Resolution*

"Establishing, pursuant to subdivision (d), § 20 of Act No. 189, of 1942, the percentage to be deducted, in the final liquidation of insurance policies for death or physical disability, for the purpose of rendering possible the monthly liquidation of more than four cases and preventing, insofar as possible, the continued accumulation of cases pending liquidation.

"WHEREAS: The experience of seven years has shown that all the cases of insurance for death and physical disability which are accumulated monthly cannot be liquidated with the proceeds of the four monthly assessments established by the Act as the maximum to be collected from insured employees.

"WHEREAS: During the fiscal year 1945–46, the board of directors of the Association of Employees of the Insular Govern-

ment approved 86 claims for insurance, of both classes, for death and physical disability, that is, an average of more than 7 monthly risks;

"WHEREAS: This average of more than 7 claims for monthly insurance is equivalent to over 3 claims in excess of the maximum of 4 fixed by the Act for the collection of the quotas for insurance from insured employees;

"WHEREAS: During the portion of this year—1946-47—which has elapsed, this board of directors has approved 73 claims of insurance for death and physical disability, of both classes, which gives an average of 9 monthly claims, that is, five in excess of the maximum amount of quotas that may be collected, pursuant to the Act; and

"WHEREAS: Notwithstanding said maximum of quotas that may be collected, as established by the Act, in anticipation of the possibility of the accumulation of cases, in excess of the four fixed for liquidation, in setting forth, in subdivision (d), § 20 of Act No. 189, of 1942, the following:

". . . *Provided, however,* That the ten (10) per cent mentioned in clause (*c*) hereof may, by well-founded resolution of the board of directors, be increased, provided the said board is justified therefor, for the purpose of preventing the accumulation of cases pending liquidation, or may be reduced when the amount of said fund is considered sufficient to liquidate the cases in excess which may arise in a reasonable period of time in the discretion of the board.

"THEREFORE: The board of directors of the Savings and Loan Fund Association of the Employees of the Insular Government of Puerto Rico, for the reasons stated in the expositive part of this Resolution, and in the exercise of the power vested in it by the aforesaid subdivision (d), § 20 of Act No. 189 of 1942, RESOLVES:

"1. To increase—and it hereby increases—from 40% to 55% the amount to be deducted from every insurance policy for death or for physical disability, of the first and second classes, at the time of the final liquidation of such policies, pursuant to the liquidation procedure established in the aforesaid § 20 of Act No. 189 of 1942."

The plaintiffs alleged in their complaint that Manuel Maldonado Denis is entitled to be paid 85% of $4,261 as the beneficiary under a policy in the name of Manuel Maldonado

López. They assert that under § 20, as amended by Act No. 189 of 1942, only 15% may be deducted from the amount due the beneficiary: (1) 2% for the relief fund as provided in § 20(a); (2) 3% for reimbursement of members who cease in their offices without collecting insurance as provided in § 20(b); (3) 10% as provided in § 20(c) for a reserve fund "the proceeds of which shall be applied to the liquidation of such cases of disability or death as may result in excess of the four cases which, in accordance with law, should be liquidated monthly with the assessments deducted ..."

As indicated above, the resolution of February 25, 1947 adopted by the Board of Directors provided for the deduction of 55% rather than 10% for the reserve fund contemplated by § 20(c). Accordingly, the plaintiff's policy was liquidated by distributing to the beneficiary 40% thereof and retaining (1) 2% for the relief fund, (2) 3% for reimbursement to former employees, and (3) 55% for the reserve fund provided in § 20(c). The action of the Board in increasing the reserve fund established in § 20(c) to 55% was taken pursuant to § 20(d) reading in part as follows:

"(d) And the remaining eighty-five (85) per cent shall be applied in each case to the payment, strictly by turns, of the disability or death insurance; *Provided, however,* That the ten (10) per cent mentioned in clause (c) hereof may, by well-founded resolution of the board of directors, be increased, provided the said board is justified therefor, for the purpose of preventing the accumulation of cases pending liquidation, or may be reduced when the amount of said fund is considered sufficient to liquidate the cases in excess which may arise in a reasonable period of time in the discretion of the board; *Provided, further,* That in case more than four deaths or cases of disability occur in any one month, these shall be paid in the manner stated in clause (c) or in default thereof, if this were impossible, in the succeeding months in the order in which such deaths or disabilities shall have occurred; *Provided, also,* That the board of directors is hereby empowered to grant loans to disabled members and to the beneficiaries of deceased members when such persons would have to await their turn for a longer

period than two (2) months to collect the amount of the corresponding insurance, for a term not to extend beyond the date on which the member or his beneficiaries shall receive the total amount of insurance, and the amount thereof shall not exceed sixty (60) per cent of the amount corresponding to them for their insurance, taking as a basis the amount of the last insurance paid for disability or death. ..."

The only question presented in the case is whether the resolution of the Board of February 25, 1947 was valid under the terms of § 20(d). The plaintiffs moved for a summary judgment after the defendant had answered two interrogatories and had filed its answer to the complaint. The trial court denied the motion of the plaintiffs for a summary judgment. The plaintiffs thereupon moved that judgment be entered against them in order that they might appeal. Pursuant to this request, the trial court entered a judgment dismissing the complaint. The case is here on appeal from that judgment.

The plaintiffs assign three errors. However, they all concern the same fundamental question—the validity of the resolution of the Board adopted on February 25, 1947. We cannot agree with the contention of the plaintiffs that § 20(d) permits the Board to increase the reserve fund "for the purpose of preventing the accumulation of cases pending liquidation" only an additional 10%. We find no such restriction in § 20(d). On the contrary, it plainly leaves the amount of increase—or decrease—in the amount to be deducted for this purpose to the discretion of the board, subject to the standards laid down in § 20(d).

The plaintiffs argue that the Legislature could not validly delegate to the board complete and unfettered discretion as to deductions for the reserve fund provided in § 20(d). We assume that the same considerations governing delegations of legislative power in the ordinary case apply to the powers of the board to manage the insurance funds involved herein, in which those who have contributed thereto have

certain vested rights. *Cf. Arzola* v. *Loan Fund Association,* 72 P.R.R. 394, 396; *Buscaglia, Treas.* v. *Tax Court, Riera, Intervener,* 67 P.R.R. 532, 542; *Díaz* v. *López,* 47 P.R.R. 512; *García* v. *Soltero,* 65 P.R.R. 281. But the Legislature has not failed to lay down standards or policies to guide the board in this matter. On the contrary, the standards established in § 20(d) are sufficient to come within the rule that statutes authorizing executive and administrative agencies to adopt regulations having the force of law are valid, provided the statutes lay down a standard or policy, for which the regulations fill in the details. *Hilton Hotels* v. *Minimum Wage Board,* 74 P.R.R. 628, 649, and cases cited.

■■ The question remains as to whether the board adopted a "well-founded" resolution as required by § 20(d) to justify the increases in the deductions for the reserve fund "for the purpose of preventing the accumulation of cases pending liquidation". The figures in the record, which are not disputed by the plaintiffs, show the following: In 1937 when Act No. 150, Laws of Puerto Rico, 1937, was approved, there was an accumulation of 89 cases for physical disability and 72 death cases, making a total of 161 cases. On October 3, 1944 the Board, pursuant to Act No. 189 of 1942, adopted the first resolution providing for an increase of the deductions for the reserve fund from 10% to 20%. When that resolution was approved, 110 cases of physical disability and 62 death cases, totalling 172 cases, had accumulated. On September 10, 1946 the board adopted its second resolution increasing the said deductions from 20% to 40%. At that time there were 130 cases of physical disability and 74 death cases pending liquidation. On February 25, 1947 the board adopted the resolution involved in this case increasing the deductions for the reserve fund from 40% to 55%. On that date 149 cases of physical disability and 73 death cases had accumulated, making a total of 220 cases.

As of the date this information was furnished to the trial court—June 20, 1951—there were 76 cases pending liquidation. Of these 76 cases, the date of death in the oldest case was July 26, 1950, or approximately a year prior to June 20, 1951. On the other hand, on October 3, 1944—the date of the first resolution increasing the deductions from 10% to 20%—the oldest unliquidated case had been pending approximately 2-½ years; on the date of the second increase from 20% to 40%—September 10, 1946—the oldest pending case was three years old; on February 25, 1947—when the resolution herein increasing the deductions from 40% to 55% was adopted—the oldest unliquidated case had been pending for three years.

The defendant could not, of course, arbitrarily increase the deductions for the reserve fund established in § 20 (d). But the facts we have recited do not show that it has been arbitrary. On the contrary, we think that the resolution enacted on February 25, 1947 was "well-founded" in the light of the standards established in § 20 (d) and the problems raised by the number of cases which arose under Act No. 52 as amended. Without the increases in the deductions for the reserve fund made by virtue of the resolutions of the board, the number of cases pending liquidation would be even greater.

Provided the board adopts a policy which reasonably complies with the standards laid down in § 20 (d), we have no authority to substitute our judgment for that of the board when the latter in the exercise of its discretion determines what increases or decreases, if any, should be made in the deductions for the reserve fund established in § 20 (d). *Rent Director* v. *District Court*, 73 P.R.R. 379, 383, and cases cited. No one could contend, on the basis of the figures in the record, that the insurance system established by Act No. 52 as amended is working perfectly. But that is obviously the fault of the quota system for payments into the fund—

and the lack of any actuarial basis therefor—as established by the Legislative Assembly rather than of any resolution or action of the board. The remedy, if any is needed, is in the hands of the Legislature, not the board.

The judgment of the Superior Court will be affirmed.

Mr. Justice Negrón Fernández, Mr. Justice Ortiz and Mr. Justice Pérez Pimentel did not participate herein.